HARRY B. BLESSING, PLAINTIFF, v. THE BLACKBURN VARNISH COMPANY, DEFENDANT.

Argued April 5, 1919—Decided July 10, 1919.

1. On a judgment in attachment in the District Court, where there is no appearance by the defendant, the execution is strictly limited to the property attached.
2. A judgment in attachment in the District Court, where there is no appearance by the defendant, may not be docketed in the Court of Common Pleas or Supreme Court.

---

On motion to vacate judgment.

Before Justice KALISCH, by consent.

For the rule, *Walter Taylor.*

*Contra, Melosh & Morten.*

The opinion of the court was delivered by

KALISCH, J.   This case comes before me on a rule to show cause why a docketed judgment entered in the Supreme Court should not be set aside.   By the state of the case agreed upon between the attorneys of the respective parties it appears as follows:   That on November 23d, 1918, a writ of attachment issued out of the District Court of the First Judicial District of the County of Monmouth, at the instance of the plaintiff against the defendant for $450, and, subsequently, on December 4th, 1918, the officer of that court made a return that he had attached the goods and chattels of the defendant, to wit, E. J. Stroud, $111.20; E. H. Moore, $22.20; Mulligan & Braye, $21.60, and J. J. Travis, $25, in the aggregate, $180, no part of which was collected by the officer.   The defendant entered no appearance, and on December 26th, 1918, judgment was entered in said proceeding for the plaintiff for $392.92 debt and $28 costs.   Subsequently, the plaintiff caused the judgment to be docketed in the Monmouth County Common Pleas Court for $420.92 and costs of docketing; and afterwards caused the judgment to be docketed in the New Jersey Supreme Court.

A writ of *fieri facias* was issued on the judgment out of the Supreme Court directed to the sheriff of Monmouth county on January 17th, 1919, which official made a levy under the execution and collected thereunder from the persons in whose hands moneys were attached under the attachment issued out of the District Court the following sums:   From Mulligan & Braye, $43.80; from H. H. Moore, $22.20; from J. J. Travis, $50.27, and from E. J. Stroud, $106.55; in the aggregate, $221.24, which amount, less sheriff's fees, was paid to the plaintiff.

A transcript from the docket of the Supreme Court shows that the judgment was docketed as follows:

Harry B. Blessing

vs.

The Blackburn Varnish Company, a corporation of the State of Ohio.

On contract Monmouth Common Pleas.
Debt, $392.92
Costs, $28.75
Docktg., $2.00

Judgment docketed in Monmouth Common Pleas from the District Court of the First Judicial District of the County of Monmouth.

A complete scheme is provided in the District Court act for the collection of moneys due from a garnishee and attached under the act. *Comp. Stat.*, pp. 1978, 1979, §§ 73, 74, 75, 76.

The plaintiff, concededly, did not pursue the practice there prescribed. He caused the judgment to be first docketed in the Common Pleas Court and then in the Supreme Court. The judgment here is docketed as if it were an ordinary common law judgment, whereas it is not. *Miller* v. *Dungan*, 36 *N. J. L.* 21; *Davis* v. *Megroz*, 55 *Id.* 427; *Baldwin* v. *Woodbridge & Turner Co.*, 59 *Id.* 317; *Goldmark* v. *Magnolia Metal Co.*, 65 *Id.* 341.

Without an appearance by the defendant, as here, the attachment proceedings are strictly *in rem,* and the judgment is available only against the property attached. *Davis* v. *Megroz,* 55 *N. J. L.* 427, 429.

In view of the fact that an attachment proceeding is *in rem,* and that a judgment obtained therein, where there has been no appearance by the defendant, can only operate against the property attached, what useful purpose then can the docketing of such judgment accomplish? None has been suggested. To me it is evident that the docketing of the judgment in attachment in the Court of Common Pleas can only tend to create an additional and unwarrantable expense in collecting the proceeds of the property attached. Such an

effect was certainly not within the legislative design. More-over, the legislative declaration that execution may issue on such docketed judgment out of the Common Pleas Court which shall be of the same effect as to the property of the judgment debtor, either personal or real, as if issued on a judgment obtained in such Court of Common Pleas upon a suit commenced therein, seems to me to characterize the na-ture of the judgment to be docketed to be such as will permit an execution against all the property of the judgment debtor, either real or personal, whereas, on a judgment in attachment, where there is no appearance by the defendant, the execution is strictly limited to the property attached.

In *Miller* v. *Dungan, supra,* it was held that "a judgment obtained in a proceeding, by attachment against a non-resi-dent debtor, who does not appear to such suit, will not form a legal foundation for an action." Chief Justice Beasley (at *p*. 23), in commenting on the nature of such a judgment, said: "The proceeding is altogether statutory, and has no other or greater effect than such as has been, either in express terms or by reasonable intendment, given to it by the legis-lative will. The judgment resulting from the procedure, is subject to the same rule, for it is altogether a statutory, and in no sense a common law judgment. The contention that the judgment is to have the force of one against the person, is not consistent with common justice, or with the several provisions of the statute in its general spirit."

For the plaintiff it is argued that section 168 of the Dis-trict Court act (*Comp. Stat., p.* 2005) provides that any final judgment of the District Court, if not less than $10, in-cluding costs, may be docketed in the Court of Common Pleas; that the language "any final judgment" is broad enough to include a judgment in an attachment proceeding, even without an appearance by the defendant; and, further, because section 172 of the act expressly declares that "such judgment shall from the time of such docketing in the Court of Common Pleas operate as a judgment obtained in a suit originally commenced in said court, * * * and execution may issue thereon out of such Court of Common Pleas, which

shall be of the same effect as to the property of the judgment debtor, either personal or real, as if issued on a judgment originally obtained in such Court of Common Pleas, upon a suit commenced therein."

In *Messerer* v. *Vannerman*, 63 *N. J. L.* 535, Mr. Justice Dixon, speaking for the Supreme Court, says: "The main design of the legislature in enabling parties to docket in the Common Pleas judgments rendered in the Justice's and District Courts has always been supposed to be that the debtor's real estate might be sold for his debts. This is the only design which cannot be as well effectuated by execution out of the lower courts as by execution out of the Common Pleas."

It is necessary to bear in mind that a judgment in attachment binds only the property attached, where there is no appearance by the defendant. The judgment can only operate effectually against the attached property. The act of docketing the judgment cannot enlarge its scope. It cannot be made a lien on any land of the defendant, since the land was not and could not be lawfully attached in a District Court proceeding. No good reason has been suggested for the docketing of such a judgment, and it may be safely said that none exists. Sections 168 and 178 must therefore be held not to include a judgment in an attachment proceeding where there has been no appearance by the defendant, for the reason of the peculiarity and nature of the judgment, as has been sufficiently pointed out.

The docketing of a judgment in the Common Pleas Court is a necessary preparatory step to be taken before such judgment can be properly docketed in the Supreme Court. This right is accorded by section 6 of the act relating to judgments (*Comp. Stat.*, *p.* 2957), which provides that any final judgment of a Circuit Court or Common Pleas may be docketed in the Supreme Court, and by section 11, page 2958, which further declares "that such judgment shall, from the time of such docketing in the Supreme Court, operate as a judgment obtained in the Supreme Court."

Thus, it is to be observed that, according to the record before me, a judgment obtained in the District Court, in an

attachment proceeding, where there was no appearance by the defendant, has been transformed by going through the statutory evolutionary process of docketing, from a judgment operative only against the property taken under the writ of attachment into a judgment enforceable against any and all of the real and personal property of the defendant found within the territorial limits of this state, without affording the defendant an opportunity to have his day in court in regard to such other property affected by the judgment.

Although the validity of the docketed judgment, as such, in the Court of Common Pleas, was necessarily considered by me in disposing of this case, I am satisfied that I am without authority, on this motion, to make any order regarding it. The proper practice to pursue is to apply to the Court of Common Pleas wherein the judgment was docketed to have it vacated. *McLaughlin* v. *Cross*, 68 *N. J. L.* 599.

The motion to vacate the judgment docketed in this court must prevail. The judgment is set aside, with costs.